that in the affidavit upon which the motion to vacate the levy was made it was alleged that "such attempted levy has been made, as I am informed and verily believe, by serving upon the said Produce Exchange Trust Company or some of its officers a notice in the form prescribed by subdivision 3 of section 649 of the Code of Civil Procedure." There was in that case, therefore, no question as to the sufficiency of the notice served by the sheriff, and that such notice was sufficient is assumed both in the opinion of this court and in the Court of Appeals. 165 N. Y. 193, 58 N. E. 896, 55 L. R. A. 796.

In order to sustain this action, the plaintiff must prove that the notice served with the warrant of attachment was the notice prescribed by subdivision 3 of section 649 of the Code; and I do not think this allegation of the complaint is sufficient to show that the notice that was served did describe the property that was attached, namely, the interest of the defendant, in the action in which the attachment was issued, in the property in possession of the deposit and storage company.

VAN BRUNT, P. J., concurs.

---

(90 App. Div. 443.)

JEFFERSON COUNTY NAT. BANK v. DEWEY et al.

(Supreme Court, Appellate Division, Fourth Department. January 19, 1904.)

1. BILLS AND NOTES—INDORSER'S LIABILITY—PAYMENT.

> After the dishonor of a note on which defendants were indorsers, plaintiff recovered judgment against the maker alone for the full amount thereof, and thereafter sued to set aside certain alleged fraudulent conveyances by the maker in which plaintiff recovered judgment, and from the proceeds of the property sold a large part of the amount of the debt was paid, and, the balance being paid by the indorsers, plaintiff surrendered the note to one of them. The judgment in the equity suit was subsequently reversed on appeal, and plaintiff was ordered to return the proceeds of the property sold thereunder, which it did. *Held* that, the delivery of the note having been made with intent to discharge the indorsers without fraud or mistake, plaintiff had deprived itself of the power to subrogate the indorsers on their payment of the full amount of the note, and hence their liability on the note for any balance was discharged.
>
> Williams, J., dissenting.

Appeal from Trial Term, Jefferson County.

Action by the Jefferson County National Bank against Addice E. Dewey and others. From a judgment in favor of defendants, plaintiff appeals. Affirmed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, and STOVER, JJ.

Lansing & Lansing, for appellant.

Brown, Carlisle & Hugo, George V. Womer, and John M. Carlisle, for respondents.

STOVER, J. On the 25th day of December, 1891, the Eureka Chemical Company, a corporation doing business at Syracuse, N. Y., made and delivered its promissory note for $2,800, payable in

three months at plaintiff's banking office. Said note was payable to the order of A. E. Dewey, the testator of the defendant Adelaide W. Dewey and the other defendants, and was indorsed by each of them. Plaintiff discounted said note at its date, and, not being paid at maturity, it was protested for nonpayment, and notice duly given to the indorsers. Plaintiff on September 2, 1892, recovered judgment on said note against the maker for the full amount thereof ($2,934.76).

Plaintiff subsequently brought an action based upon this judgment against Margaret A. Townley and others to set aside certain judgments which were apparent liens upon the property of the Eureka Chemical Company, but which were claimed to be fraudulent as to plaintiff. Plaintiff recovered a judgment in said action, and the property of the Eureka Chemical Company was sold thereunder, and on March 21, 1895, the proceeds of such sale, amounting to $2,576.41, were paid to plaintiff, and that amount, less the legal fees for collection, was indorsed upon the note in question. In December, 1895, plaintiff demanded of the indorsers the payment of the balance due on said note, and on December 18, 1895, A. E. Dewey, Nettleton, and Phillips each paid about $127, being one-sixth of the amount due. About March 1, 1896, the plaintiff demanded of the defendants Nettleton and A. E. Dewey the sum of $430.70 as the balance due upon said note, and on the 7th day of March, 1896, the defendants Albert E. Nettleton and A. E. Dewey paid the balance of $430.70 due on said note, and the plaintiff indorsed said sum upon said note, and then surrendered said note to said A. E. Dewey, who continued in possession thereof from said date, and produced said note upon the trial of this action.

The referee finds that such payment and delivery were made with the intent and purpose of discharging the debt, and that said note was voluntarily surrendered with full knowledge of the facts, and without any fraud or mistake existing after the payment of March, 1895. An appeal was taken by Margaret A. Townley in the creditors' action, and the judgment and decree under which the money paid over on March 21, 1895, was collected, was reversed. On August 12, 1899, an order was made directing the plaintiff to repay said sum to the sheriff, and such repayment was made by plaintiff. Plaintiff subsequently demanded said sum and costs incurred from the defendants Nettleton and A. E. Dewey, which demand was refused.

It was conceded on the trial that as to the defendants other than Nettleton and Dewey, except Phillips, the claim upon said note was barred by the statute of limitations, and that said Phillips was insolvent. It is contended by appellant that the creditors' action was brought at the request of defendants Nettleton and A. E. Dewey. The trial court has found to the contrary upon evidence which justified such finding. There is no direct evidence of an agreement to bring the suit, and one of the respondents denies that there was any agreement. So, however strong the inference from circumstances of an agreement, the court's finding cannot be disregarded on appeal.

There was no mistake of fact. The payment of the balance claimed to be due was made with a full understanding of the circumstances. When the payment was made the indorser's right to subrogation, except for the amount then paid, was gone. The holder had no claim against the indorser, and if the entire amount of the note had been paid by the indorsers they would have had no recourse against the maker beyond the balance due after crediting the amount realized upon the judgments against the maker. It was not possible, at the time the balance was paid by the indorsers, for plaintiff to put them (the indorsers) in a position to enforce the notes for their full amount against the makers.

The rule applied in Larkin v. Hardenbrook, 90 N. Y. 333, 43 Am. Rep. 176, should be applied here. The court having found upon sufficient evidence that the note was surrendered at the time of the payment of the balance then due, "with the intent and purpose of discharging the debt, and the plaintiff accepted said sum and indorsed the same upon the said note, and thereupon surrendered said note to said Addice E. Dewey," one of the indorsers, and "that said note was voluntarily surrendered by the plaintiff at said time with full knowledge of all the facts, and without any fraud or mistake existing at that time," a complete satisfaction was shown, and effect should be given to it.

Plaintiff might have reserved its right, but it did not. It is quite evident that it relied upon its judgment, and when it surrendered the note it intended to discharge the liability of the indorsers. In fact it could not refuse to do otherwise. It had the avails of the judgment credited to the note, and the indorsers were entitled to its surrender on payment of the balance. If plaintiff had by any act of its own placed itself in a position where it was not able to respond to the indorsers upon a demand of subrogation on payment as indemnity for the full amount paid, it alone was responsible, and so far as it had lost the ability to answer to the demand it had relieved the indorsers.

The evidence warranted the findings of the trial judge, and the law was correctly applied. The judgment should be affirmed. All concur, except WILLIAMS, J., who dissents in an opinion.

WILLIAMS, J. (dissenting). The judgment should be reversed, and a new trial granted, with costs to appellant to abide event. The action was brought to recover the amount unpaid upon a note, and costs incurred in an effort to collect the same from the maker, these defendants being indorsers upon the note. Most of the facts are undisputed. The Eureka Chemical Company, a corporation doing business at Syracuse, N. Y., December 25, 1891, made its note for $2,800, payable, three months after date, to the order of Dewey, Nettleton, Farmer, Phillips, and two Copleys. All the payees indorsed the note, and it was transferred to this plaintiff, the Jefferson County National Bank. When the note matured it was not paid, and was protested, and the indorsers had notice thereof. An action was thereafter brought upon the note against the maker, the Chemical Company alone, and a judgment recovered September 2, 1892,

for $2,934.76. An action based upon this judgment was then brought to set aside certain judgments recovered by Mrs. Townley against the Chemical Company, and which had become liens upon its property prior to this plaintiff's judgment. This plaintiff had judgment at the trial term setting aside the Townley judgments, and under the same the sheriff paid to this plaintiff, March 21, 1895, the sum of $2,576.41, being the proceeds of property of the Chemical Company which he had sold. This amount, less what was paid for collecting check, $2.41, leaving $2,574, was received and applied upon the note in question. Thereafter the balance of the note was paid by the indorsers, viz.: December 18, 1895, by Dewey, $126.88, and by Nettleton, $126.88; December 24, 1895, by Phillips, $127; and March 7, 1896, by Dewey and Nettleton, $430.70. The note was thereupon surrendered by the plaintiff to Dewey and Nettleton. After the payment of the money by the sheriff to this plaintiff under the judgment in the Townley action, that judgment was affirmed on defendant's appeal by the General Term, January 13, 1896, but on appeal by defendants to the Court of Appeals the judgment was, June 13, 1899 (54 N. E. 74), reversed, and a new trial ordered. August 12, 1899, the court made an order of restitution in the Townley action, directing this plaintiff to pay back to the sheriff the money received from him by depositing the same in the Trust & Deposit Company of Onondaga County to his credit, and the plaintiff complied with that order, and paid to the trust company, August 31, 1899, $2,576.41, and also paid $10 costs of the application for such order. November 14, 1899, the Townley action was again ·tried, and judgment rendered dismissing the complaint, with $635.51 costs, and directing the money in the trust company to be paid by the sheriff to Mrs. Townley, and it was so paid. This plaintiff paid the costs awarded November 22, 1899.

After this plaintiff had been compelled to pay back the money received from the sheriff and allowed as a payment on the note it notified Dewey and Nettleton and all the other indorsers on the note of the situation, and asked them, in substance, to make this plaintiff whole as to the amount unpaid upon the note and as to the costs of the Townley suit. This request not being complied with, this action was brought December 7, 1899, to recover the sum of $2,576.41 repaid to the sheriff, and the costs paid by this plaintiff in the Townley action, $635.51. In form the action was against all the indorsers, but Dewey and Nettleton only were served. The others were considered as irresponsible. The two defendants served answered, and the trial was had before Justice Hiscock and a jury in January, 1901, while Mr. Dewey was still living. At the close of the evidence, with the consent of the parties, the jury were discharged, and the case was to be submitted to and decided by the court. Mr. Dewey died March 28, 1902. Justice Hiscock went into the Appellate Division, and October, 1902, by consent of parties, the case was submitted to Justice Andrews, and his decision was rendered and judgment entered thereon in April, 1903, dismissing plaintiff's complaint as to both claims for amount unpaid on note and costs in the Townley

Case. This result followed some conclusions found by the court, which are questioned upon this appeal, viz.:

"(1) There being no proof in the case to show that the defendants Addie E. Dewey or Albert E. Nettleton ever requested the plaintiff to commence the judgment creditors' action against Margaret A. Townley, there is no liability on the part of the defendants Nettleton and Dewey to pay the costs incurred by the plaintiff upon the trial of the said action. (2) The note in question having been paid after maturity, and voluntarily surrendered by the plaintiff to said Nettleton and Dewey with the intent and purpose of discharging the debt, and without any fraud or mistake of fact on the part of the plaintiff, such voluntary surrender operated as a release and discharge from any liability against said defendants Albert E. Nettleton and the said Addie E. Dewey."

These findings are in part of facts and in part of law based upon the findings of fact. The findings of law were correct if the facts were properly found. The facts were, in substance: (1) That there was no proof that the Townley action was brought at the request of the two indorsers; (2) that the surrender of the note was not made under any mistake of fact.

1. Upon the first question let us look at the facts and circumstances surrounding the commencement and prosecution of the Townley action. Mr. Camp, the president of the bank, plaintiff, who had charge of the business, was dead at the time of the trial. He died February 1, 1897. That was after the affirmance of the Townley judgment at General Term, but before the reversal in the Court of Appeals. It was after the payments upon the note in 1895, and before the. final payment and surrender of the note, in 1898. The Townley action clearly was brought and prosecuted for the benefit of the indorsers upon the note. The bank had no reason for bringing the action.· It could have required Dewey and Nettleton to pay the note, and no suit against them would have been necessary. They were concededly liable for the amount of the note, and were perfectly responsible. If that course had been adopted the bank would have received its money, and the burden would have fallen upon the indorsers of bringing and prosecuting the Townley action. After the Townley judgments had been recovered, motions were made to set them aside. Mr. Dewey was president of the Chemical Company, and Judge Sawyer was one of the directors, the only lawyer on the board and the legal adviser of the company. Judge Sawyer made these motions. The defaults were opened, and cases referred and tried, but judgments were again recovered and executions issued thereon and levied upon the company's property. Then Judge Sawyer and Mr. Dewey had a consultation as to the way to get rid of these judgments. Judge Sawyer advised that an action be brought by some creditor who had a judgment against the company. After some conversation as to how the matter could be done, and in behalf of what creditor, it was concluded that the better way would be to bring an action in behalf of the bank, this plaintiff, upon this note on which some of the directors were indorsers, and procure a judgment against the company, and then with that judgment set aside the Townley judgments as in fraud of creditors. Judge Sawyer told Mr. Dewey that he had better see Mr. Camp, president of the bank,

explain the matter fully to him, and see if he could not obtain his consent to bring the action in that way. Mr. Dewey then left Judge Sawyer. Within one, two, or three days after this Mr. Camp brought the note to Judge Sawyer in his office and left it with him. Judge Sawyer had the note put in judgment against the company alone, his managing clerk, Mr. Steele, acting as attorney for the bank, and the summons being served upon Mr. Dewey, as president of the company. Upon the recovery of that judgment a motion was made, based thereon, to set aside the Townley judgments as fraudulent against creditors of the company. The court held that relief could only be afforded in an action in equity, and proceedings on the judgments and executions were stayed to enable the action to be brought. The action was then brought, and a temporary injunction was issued and served. Upon motion the injunction was continued during the pendency of the action. Judge Sawyer communicated with Mr. Camp before the equity action was commenced, and Mr. Camp verified the complaint. Judge Sawyer acted as attorney for the plaintiff. Mr. Dewey and one of the Copleys, indorsers on the note, were the sureties upon the bond for the injunction. Mr. Dewey aided Judge Sawyer in the preparation and trial of the suit. The bank paid no attention to it. Judge Sawyer had charge of the case until after the reversal in the Court of Appeals, and during the proceedings for restitution. He was not the general counsel of the bank, and finally turned the matter over to Mr. Lansing, who was general counsel for the bank. These circumstances were sworn to by Judge Sawyer upon the trial of this action, and if his evidence was believed it not only justified the inference that the bank permitted the note to be put in judgment and the equity suit to be commenced and prosecuted at the request and for the benefit of the indorsers upon the note, but such inference would be irresistible. The only answer to it is that Mr. Dewey as a witness on the trial denied the interviews sworn to by Judge Sawyer, and denied that he had any interview with Mr. Camp or any officer of the bank with reference to the matter. He was, however, a party to the action, his credibility was for the court to determine, and the court might find he had the interview with Mr. Camp advised by Judge Sawyer, inferring that fact from the circumstances, even though Mr. Dewey denied it upon the stand. Mr. Camp was dead, and could not speak upon the subject; but how came he to bring Judge Sawyer the note and leave it with him without any directions whatever, unless some one had talked the matter over with him beforehand. Judge Sawyer testified he did not make any arrangement with him. Some one certainly did; otherwise why should he, as president of the bank, which had no interest in the Townley litigation, but had the means of securing payment of the note by merely demanding it of Dewey and Nettleton—why should he, I say, set this whole Townley litigation in motion? The finding that there was no evidence in the case that Dewey and Nettleton requested the bank to commence this litigation cannot and should not be sustained. The only reasonable conclusion that could be drawn from the evidence was that Judge Sawyer and Mr. Dewey acted for the indorsers on the note in commencing and carry-

ing on the litigation. These indorsers were the only persons to be benefited by setting aside the Townley judgments. Mrs. Townley had valid debts against the Chemical Company, but it was claimed the judgments and liens procured thereon were in fraud of the rights of the creditors represented by this note. When the judgments were set aside the company's property would be released from the liens of the judgments, and would be applied in payment of this note to the relief of the indorsers. There was no direct proof that Mr. Nettleton any more than Mr. Dewey requested this Townley litigation to be begun and continued, but he knew it was going on, and that it was for his benefit as well as Mr. Dewey's, and the fair inference was that it was so begun and carried on with his assent and by his request through Mr. Dewey, if not personally. Under all the circumstances, there was evidence that the Townley litigation was undertaken and carried on at the request of these two defendants, and this fact should have been found by the trial court.

2. The court erroneously found that the note was not surrendered under any mistake of fact. The facts with reference to the surrender were not in dispute. All the parties understood that the money paid by the sheriff to the bank under the judgment in the Townley action could be retained, and would not have to be paid back, and that it was an absolute payment of so much upon the note. The Townley litigation was being conducted by the defendants in the bank's name, and this money was therefore procured by the defendants to be paid over to the bank as an incident of that litigation. No one had the slightest apprehension of a reversal of the judgment directing that money to be paid to the bank when the note was surrendered. The reversal was close, four judges voting for the reversal and three for affirmance. 159 N. Y. 490, 54 N. E. 74. The effect of this reversal was to make the judgment as if it had never been, and to render the payment by the sheriff to the bank unauthorized, and to require the money to be repaid. It was not in fact a payment to the bank of any money which it could apply on the note, and the surrender was therefore made under the mistake shared in by all the parties that there had been a payment made upon the note of the amount received from the sheriff under the Townley judgment. In fact there had been no such payment. Upon this finding of the court we have this condition of things: The defendants, indorsers, were conducting the Townley litigation in the name of the bank to secure payment of this note. In the course of the litigation they procured this money to be paid by the sheriff to the bank to apply on the note. All parties supposed this to be an absolute payment of money, which the bank could keep, and upon this understanding the bank and the defendants straightened up the note, and the defendants paid the balance thereof, and it was surrendered to them as a fully paid note. In the further progress of the litigation, however, this payment by the sheriff turned out to be without authority, and the court, in this same litigation, being conducted by the defendants, compelled the bank to pay back the money. Still the defendants, by the surrender of the note, were relieved from the obligation to replace the money which had been regarded as a payment on the note, but which turned out not to have been a payment at all. The note has never been fully paid.

The indorsers are still liable for this amount, supposed to have been paid, which, however, never has been paid. The result in this case, as it has been decided by the trial court, is unjust, and unfair, and it should not be permitted to stand. The bank by its president kindly consented to postpone payment of this note by the indorsers, and to allow this Townley litigation to be commenced and carried on in its name, for the purpose of receiving thereby the whole or a part of moneys owing upon the note from the Chemical Company's property. This purpose was understood to have been accomplished, and the indorsers to have been benefited to the extent of $2,576.41, but finally the effort failed. This money was lost, and a bill of costs of $635.51 was left for the bank to pay. The court ought not to permit the defendants to leave this burden upon the bank as a reward for its forbearance and kindness in the premises. The two findings of fact considered were erroneously made. Facts should have been found from which the legal conclusion would follow that plaintiff was entitled to recover both the balance due on the note and the costs of the Townley litigation. All the findings were duly excepted to. The conversation between plaintiff's counsel and Justice Hiscock on the trial do not render the exceptions ineffectual.

I conclude that the judgment should be reversed, and a new trial granted, with costs to the appellant to abide event.